## CONSTITUTIONAL LAW—INSOLVENT LAW.

PENNIMAN v. MEIGS, 9 J. R. 325; overruled by case of CROWNINSHIELD v. STURGES, 4 Wheat. 122, &c.; OGDEN v. SAUNDERS, &c., id. MATHER v. BUSH, 16 J. R. 233; ROOSEVELT v. CEBRA, 17 J. R. 108; overruled as *ante.*, NEW LOAN OFFICERS OF ALBANY v. CAPRON, 17 J. R. 44; ROOSEVELT v. KELLOGG, 20 J. R. 208.

*Effect of Discharge of Debtor from his Debts, under State Insolvent Laws on Contract.*

IN the case of *Penniman* v. *Meigs*, an action of assumpsit, was brought upon a promissory note given in Connecticut, after which the defendant removed to Albany, and thence a short time before the note was given, to the state of Rhode Island. After the giving of the note, the defendant obtained his discharge under the insolvent act of this state, discharging his person and future acquisitions from the debt. A verdict having been found for the plaintiff, subject to the opinion of the court, a new trial was granted.

*Per Curiam.* There can be no doubt but that we are bound to consider a discharge under the insolvent act *of this state* as a bar to all suits brought *here* upon antecedent contracts, wherever made. The statute is peremptory, and binding on our courts. It was for the wisdom of the legislature to say whether foreign contracts should be exempted from the operation of our insolvent acts, but they have not made any such exception. New trial granted.

☞ This decision seems to have been acquiesced in by the profession in this state, until the decision of the Supreme Court of the United States, in the case of *Sturges* v. *Crowninshield*, 4 Wheat. 122. That was an action of assumpsit brought in the Circuit Court of Mass., and the defendant pleaded his discharge, obtained in 1812, under the insolvent act of the state of New York, of 3d April, 1811. The two notes on which the suit was brought were dated at New

York, on the 22d of March, 1811, *before* the insolvent act was passed. To the plea of discharge, there was a general demurrer and joilder.

After elaborate argument of the question of the constitutionality of the act: 1. As to the right of a state to pass *any* bankrupt law, and whether the power was not *exclusively* vested in Congress by the constitution; and 2. Whether the insolvent act of New York, was not "a law impairing the obligation of contracts," like that in question in the case,

The Supreme Court of the United States decided: 1. That since the adoption of the constitution of the United States, a state has authority to pass a *bankrupt law*, provided it does not impair the obligation of contracts, within the meaning of the constitution, Art. 1, S. 10; and *provided* there be no act of Congress in force to establish a uniform system of bankruptcy, conflicting with such law.

2. That the act of New York, of April 3d, 1811, which not only liberates the person of the debtor but discharges him from all liability for any debt contracted previous to his discharge, on his surrendering his property in the manner it prescribes, so far as it attempts to *discharge the contract*, is a law impairing the obligation of contracts, within the meaning of the constitution, and was not a good plea to discharge the defendant from the debt in the case before the court, and to that effect was the certificate to the Circuit Court.

At the same time the case of *McMillan* v. *McNeill*, 4 Wheat. 209, came before the court. McMillan owed McNeill $700, paid for him as his surety, in 1813, at Charleston, S. C. after which McMillan removed to Louisiana, and in 1815 was discharged under a law of 1808, of that state, as well in his person as his future property, from all his debts. Previous to this, he had obtained a discharge along with his foreign partners, under the bankrupt law of Great Britain, which was also pleaded.

The Supreme Court of the United States held, that the discharge under the act of Louisiana, was no bar, although it was passed *before* the debt in question was contracted; that it made no difference in the application of the principle in this case, McNeill the plaintiff being a resident of another state, and the same judgment was given. See also *Dart-*

*mouth College* v. *Woodward*, 4 Wheat. 518, as to state laws impairing the obligation of contracts; also, case of *Owings* v. *Speed*, 5 Wheat. 420–421; *Green* v. *Biddle*, 8 Wheat. 1, 108.

After the foregoing decision of the Supreme Court of the United States, the first question that seems to have been presented to the Supreme Court of this state, upon the effect of a discharge under the insolvent act of the state was made in the case of *Mather* v. *Bush*, 16 J. R. 233, May, 1819. That was a motion to set aside a *fi ri facias*, on the ground that the defendant was duly discharged from all his debts under the act of April 12, 1813. The judgment was entered up in May, 1817, on a contract made in 1816, and both parties were at the time of passing the act, and ever since, had been citizens of this state. Several similar applications having been made in other causes, counsel were heard for the different parties. The opinion of the court, however, embraces only the motion to set aside the *fieri facias* in this case.

Spencer, Ch. J., delivered the opinion of the Court. He says: " Were it not for the decision pronounced in the Supreme Court of the United States, at the last term, we should not hesitate for a moment in ordering the execution in this cause to be set aside, as irregularly and illegally issued; and nothing but the consideration that that court has a paramount and controlling jurisdiction in cases involving a coustruction of the constitution of the United States, has induced this court to permit the question as to the constitutionality of the insolvent law, to be argued. The respect which we feel and owe to the court of the *last resort*, must induce us, whatever may be our individual opinions, to surrender them up and yield that obedience which the constitution and laws of the United States exact of us.

" We are decidedly of opinion that neither of these cases (*Sturges* v. *Crowninshield*, and *McMillan* v. *McNeill*,) decide the question presented in this case, and that.there is a material and manifest distinction between them. In the leading case, the court cautiously declare ' that their opinion is confined to the case actually under consideration.' An insolvent or bankrupt law in force, when the contract was made, does not, in the sense or meaning of the constitutional provision,

impair the obligation of such contract. On this point the Supreme Judicial Court of Mass., have unanimously expressed an opinion which commands our full assent. In the case of *Blanchard* v. *Russell*, (13 Mass. R. 16,) they say: ' a law which is in force when a contract is made, can not be said to have that effect; for the contract being made under the law, is presumed to be made with reference to it, and the parties are legally conusant of it at the time. The contract in such case is not impaired by the law, for the law is a part of the contract.'

"On the whole, after our laws of insolvency have been continued with very little variation except as to the act of 1811, from the period of the formation of the constitution of the United States; after we have repeatedly pronounced regular and fair discharges under them to be valid and effectual for such a series of years; and when the cases decided by the Supreme Court of the United States, are so perfectly distinguishable from the case now presented, it is too much to ask this court to take a step in advance of the Supreme Court of the United States, and to anticipate their decision, on a question certainly not decided. We are therefore unanimously of opinion that the execution in this case be set aside with costs. We reserve our opinions until next term, upon the motions to set aside the executions issued on judgment, from which the defendants were discharged under the act of April, 1811, and also on the motions for leave to issue writs of *scire facias*; those cases require more consideration than the limited time of this term will enable us to bestow.

At the next August term, the case of *The New Loan Officers of The County of Albany* v. *Capron*, (17 J. R. 44,) occurred, in which the court held that a discharge under the act of April 12th, 1813, was a good bar to an action of covenant on a covenant in a mortgage, to pay the deficiency on sale of the premises.

The Supreme Court at the same term decided the case of *Roosevelt* v. *Cebra*, 17 J. R. 108, where they held that a discharge under the insolvent act of 1811, did not discharge a debt created *prior* to the passing of that act, and that the act was, as impairing the obligation of prior contracts, unconstitutional and void.

Per. Spencer, Ch. J. " As the contract on which the judgment was founded was made prior to the passing of the insolvent act of the 3d of April, 1811, we can not distinguish it from the case of *Sturges* v. *Crowninshield*. The motion to set aside the execution, must therefore be denied. Without entering into a further discussion of the question, we shall content ourselves with referring to the opinion of this court, in the case of *Mather* v. *Bush*, at the last term, and with expressing our regret at the injurious consequences, which must result from a decision which we have been compelled to pronounce, in obedience to the constitution of the United States, and what is now the law of the land."

At the August term, in 1822, the case of

### Roosevelt v. Kellogg, 20 J. R. 208,

was decided. That was the case of a plea of discharge under the act of April, 1813, and the only point which touches the question of impairing the obligation of contracts, decided by the court was, that the certificate was valid, as against a citizen of New York, although it did not except the foreign creditors. The discharge was held to be valid, the contract having been made subsequent to the act of April, 1813, between citizens of the same state.

At length, at the January term, in 1827, of the Supreme Court of the United States, the question as to the constitutionality of a state insolvent law, operating only *prospectively, upon contracts between citizens of the same state, at the time of making the contract and up to the time of discharge,* was brought before that court in the case of

### Ogden v. Saunders, 12 Wheat. 213,

in which and other cases argued with it, all the questions were fully argued. They were discussed afterwards by a divided court at great length and with eminent ability.

The case of *Ogden* v. *Saunders* was an action of assumpsit brought in the District Court of Louisiana by Saunders, the defendant in error, *a citizen of Kentucky*, against Ogden the plaintiff in error, a citizen of Louisiana. The action was

13

upon certain bills of exchange, drawn on the 30th of September, 1806, by one Jordan, at Lexington in the state of Kentucky, upon the defendant below, Ogden, in the city of New York, (he then being a resident and citizen of the state of New York,) and accepted by him at the city of New York, and protested for non-payment.

Ogden, the defendant below, pleaded several pleas, among which was a plea of discharge under the act of the legislature of the state of New York of April, 1801, for the relief of insolvent debtors, commonly called the *three fourth act*.

The jury found the facts in the shape of a special verdict on which the court below rendered a judgment for the plaintiff, and the cause was brought by writ of error to this court. The question which arose under this plea, as to the validity of the law of New York, was argued at February term, 1824, by Mr. Clay, Mr. D. B. Ogden, and Mr. Haines, for the plaintiff in error, and by Mr. Webster and Mr. Wheaton, for the defendant in error, and the cause continued for advisement until the present term. It was again argued at the present term *in connexion with several other causes, involving the general question of the validity* of the state bankrupt or insolvent laws, by Mr. Webster and Mr. Wheaton against the validity, and by the Attorney General, Mr. E. Livingston, Mr. D. B. Ogden, Mr. Jones, and Mr. Sampson, for the validity; 12 Wheat. 213–214.

The argument of Mr. Webster, p. 242, in discussing the position taken by the Supreme Judicial Court of Mass., and adopted by the Supreme Court of New York, in *Mather* v. *Bush*, " that the state law *existing at the time, is to be considered a part of the contract*," treats this great question with a force of logic that makes us regret we can not transfer it entire to our pages. We will only extract a single paragraph from his argument as reported, p. 243. He says:

" This contract," in the language of one of the authorities relied on, "is to be construed as if the law were specially recited in it."—" Let it be so for the sake of argument. But it is also to be construed as if the prohibitory clause of the constitution of the United States, were recited in it, and this brings us back to the precise point from which we departed.

"The constitution always accompanies the law, and the latter can have no force which the former does not allow to it. If the reasoning were thrown into the form of special pleading, it would stand thus : the plaintiff declares on his debt ; the defendant pleads his discharge under the law ; the plaintiff replies the law is unconstitutional, but the defendant says, 'You knew of its existence ;' to which the answer is obvious and irresistible. 'I knew its existence on the statute book of New York, but I knew at the same time it was null and void under the constitution of the United States.' "

The judges who were for reversing the decision and upholding the state laws between citizens of the same state, delivered opinions *seriatim.* Mr. Justice Washington, in an opinion of great ability, and characterized by the caution and modesty so conspicuous in his character, private and judicial, arrives at the result that the state law granting the discharge was valid in this case, as having been in force at the time the contract of acceptance was made. Mr. Justice Johnson, Mr. Justice Thompson, and Mr. Justice Trimble, delivered opinions to nearly the same effect in favor of *reversal.* The majority of the court was thus in favor of the validity of the law set up in the defendant's plea of discharge, p. 254–332.

The opinion of the *minority* of the court, Ch. J. Marshall, Mr. Justice Story, and Justice Duvall, was delivered by the Chief Justice, 12 Wheat. 332–357.

Of the great principles there discussed, the obligation of the states to furnish remedies for the enforcement of all legal contracts, the effect of a law discharging *prospective* contracts, and the high political considerations involved in the recognition of this power in each state, to shape the remedies at pleasure on contracts that might be made *after* the passage of such a law, we shall not undertake to give what would be only a faint epitome.

───────

☞ The judgment in this case was rather in favor of the validity of a discharge under the state laws, in *those cases argued in connexion with this case,* where the contract was made between citizens of the state under whose law the discharge was obtained, and in whose courts the certificate was pleaded. This case being that of a contract made between

citizens of different states, though the insolvent law under which the defendant was discharged was in existence at the time, a *re-argument* was had on that point in this case of *Ogden* v. *Saunders*, and the judgment of the District Court of Louisiana was *affirmed;* thus rejecting the state law in this particular case, on the ground that Saunders, a citizen of another state, was not bound by it. Johnson, J., delivered the opinion of the court, and in conclusion says : "And the purport of this adjudication, as I understand it is, that as between citizens of the same state, a discharge of a bankrupt by the laws of that state, is valid, as it affects posterior contracts; that as against creditors, citizens of other states, it is invalid *as to all contracts.*" Mr. Chief Justice Marshall, Mr. Justice Duvall, and Mr. Justice Story, assented to the judgment of affirmance.

Washington, Thompson, and Trimble, dissented; AND SO STANDS THE LAW AT THIS DAY.

The case of

### Meson v. Haile, 12 Wheat. 370,

at the same term, decided that the states had a right to *abolish imprisonment as a part of the remedy on pre-existing contracts,* Justice Washington, dissenting.

See

### Boyle, plaintiff in error v. Lachane and Turner, defendants in error, 6 Peters, 348.

Before this case came on for argument, Mr. Wirt in behalf of the plaintiff, (the original defendant,) inquired of the court whether the opinion of Mr. Justice Johnson, delivered in the case of *Ogden* v. *Saunders*, 12 Wheat. 213, was adopted by the other judges, who concurred in the judgment in that case.

Mr. Chief Justice Marshall said : " The judges who were in the minority of the court upon the general question as to the constitutionality of state insolvent laws concurred in the opinion of Mr. Justice Johnson, in the case of *Ogden* v. *Saunders*. That opinion is therefore to be deemed the opin-

ion of the other judges who assented to the judgment. Whatever principles are established in that opinion, are to be considered no longer open for controversy, but the settled law of the court."